UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-21177-CIV-SEITZ/MCALILEY

ROBERT D. HARLEY COMPANY, LIMITED,
a Florida corporation, HEDY SHAPIRO and
DAVID SHAPIRO,

       Plaintiffs,

v.

GLOBAL FORCE (H.K.) LIMITED, a Hong Kong
company; VICTORY CITY INTERNATIONAL
HOLDINGS LIMITED, a Bermuda company;
HOMINGTON LIMITED, a British Islands company;
and ROBERT D. HARLEY COMPANY, a Florida
corporation,

       Defendants.
_____/

## ORDER DENYING THE MOTIONS TO DISMISS
## OF DEFENDANTS VICTORY CITY AND GLOBAL FORCE

THIS MATTER is before the Court on the motions to dismiss for lack of personal jurisdiction of Defendants Victory City International Holdings Limited ("Victory City") and Global Force (H.K.) Limited ("Global Force") [DE 50, 56]. Defendants assert that they do not have sufficient contacts with the forum for the assertion of personal jurisdiction. Having reviewed both motions, the responses and replies thereto, and the entire factual record, the motions are denied.

**I.    Background**

    **A.    Procedural History**

This lawsuit arises out of the termination an Agency Agreement ( the "Agreement") between Plaintiff Robert D. Harley Co. Limited ("Harley Co.") and Global Force, pursuant to

1

which Harley Co. was engaged as Global Force's exclusive selling agent in the United States. (VAC ¶ 9.)  According to Harley Co., Global Force improperly terminated the Agreement on February 16, 2005.  (*Id.* ¶ 15.)  On February 28, 2005, Harley Co. sued Global Force, as well a related company, Victory City, in state court. (*Id.* ¶ 38.)

According to Plaintiffs, after Harley Co. filed the state court action, Homington Ltd. ("Homington"), under the guise of being a 70% shareholder of Harley Co., attempted to remove Hedy and David Shapiro (the "Shapiros") as the directors of Harley Co. and require discontinuance of the instant lawsuit.  (*Id.* ¶ 40.)  In response to Homington's actions, Plaintiff filed a Verified Amended Complaint ("VAC") adding Hedy and David Shapiro as Plaintiffs and adding Homington and Harley Co. as defendants.  (*Id.* at 1.)  The VAC included an additional claim for declaratory relief with respect to Homington's actions to remove the Shapiros as directors and to require discontinuance of the lawsuit.  (*Id.* ¶¶ 37-45.)  In addition, the VAC also included numerous shareholders' derivative claims that Plaintiff Hedy Shapiro, as a shareholder of Harley Co., intends to pursue in the event that the Court finds that Homington validly removed the Shapiros as directors of Harley Co.  (*Id.* ¶¶ 46-95.)

The case was subsequently removed to this Court on April 29, 2005 based on 28 U.S.C. 1441, diversity jurisdiction.  (DE 1.)  As mentioned, Harley Co., a Florida corporation, was named as both a Plaintiff and a Defendant in the VAC.  (VAC at 1.)  As such, Plaintiffs sought to remand the case back to state court for lack of complete diversity.  (DE 5.)  In response, Homington moved for a realignment of the parties because Homington asserted that Harley Co. was more suitably postured as a plaintiff.  (DE 7.)  On October 18, 2005, the Court denied Plaintiffs' motion for remand and granted Homington's motion for realignment because the

interests of Harley Co. are more in line with those of the Shapiros than the other Defendants. (DE 18.) Global Force and Victory City thereafter separately moved to dismiss the VAC for lack of personal jurisdiction. (DE 50, 56.)

### B.      The Parties

There are three plaintiffs and three defendants in this case. (VAC at 1.) Plaintiff Harley Co. is a company organized and existing under the laws of the State of Florida with its principal place of business in New York. (*Id.* ¶ 2.) Harley Co. acts as a sales representative of wholesalers of wearing apparel in the United States. (*Id.* ¶¶ 9-10.) Plaintiffs David and Hedy Shapiro are residents of the State of New Jersey and the sole officers and directors of Harley Co. (*Id.* ¶ 2.) Hedy Shapiro is a 30% shareholder of Harley Co. (*Id.* ¶ 2.) Defendant Homington owns the other 70% of Harley Co. and is an entity organized and existing under the laws of the British Virgin Islands. (*Id.* ¶ 6.) Defendant Global Force is an entity organized and existing under the laws of Hong Kong that manufactures and sells knitwear in the United States. (*Id.* ¶ 3.) Global Force has several divisions including World Seasons, Jerash Fashion Garment Jordan and GF Zin Hui China. (*Id.* at Exh. A.) Defendant Victory City, an entity organized and existing under the laws of Bermuda, is a holding company for several subsidiary and affiliated companies in the apparel industry. (*Id.* ¶ 4; Declaration of Thomas Lee, September 21, 2006 ("Lee Decl.") ¶ 5.)

### C.      The Business Relationship

Global Force signed the Agreement naming Harley Co. as its exclusive distributor for Global Force in the USA on July 1, 2002. (VAC Exh. A ¶ 1.) The Agreement specifically provides that it will be governed by Florida law. (VAC Exh. A.) The Agreement also

specifically excludes certain "specified clients" including, Martin Stewart Ltd. (or New York Laundry), and all divisions of their Company, Chase and King Louie.[1] (*See* VAC Exh. A ¶ 1.) Further, paragraph six of the Agreement specifically states that the agreement shall last for three years and shall continue automatically as long as Harley Co. clients collectively produced "purchases in excess of $1,000,000 during the first 18 months from date of signing" and the Agreement "will automatically be renewed for additional yearly periods of 5 years on the same terms and conditions." (VAC Exh. A ¶ 6.) Finally, Global Force cannot terminate the Agreement unless there was a breach of paragraph 6 and a 180-day written notice provided.[2] (VAC Exh. A ¶ 8.) On February 16, 2005, Global Force terminated the Agreement and refused to pay the draw and commissions due under the Agreement. (VAC ¶ 15.)

One of the clients that Harley Co. registered with Global Force, as documented in the Agreement, was VF Corporation ("VF Corp). (VAC Exh. A ¶ 9.) Global Force had been doing business with VF Corp since 2001. (Declaration of Yim Shiu Fai, August 3, 2006 ("Fai Decl.") ¶ 4.) Pursuant to the Agreement, Harley Co. solicited, obtained, and negotiated the sale of Global Force merchandise to VF Corp. (Declaration of David Shapiro, August 3, 2006 ("D. Shapiro August 3 Decl.") ¶ 9.) The head office of VF Corp is in Greensboro, North Carolina and it does business through a number of subsidiaries and divisions. (Declaration of

---

[1] The Agreement uses the term "specific clients" to refer to those clients that are excluded from the Agreement, namely, these three companies just specifically mentioned. (VAC ¶ 15; VAC Exh. A.) In contrast, in the VAC, Plaintiffs refer to the "specified accounts" as those two companies that Harley Co. registered with Global Force, namely, Columbia Sportswear and VF Corporation (including all divisions). Paragraph 8(a) of the Agreement requires Global Force to continue to pay commissions in these two accounts for three years after termination. (VAC Exh. A.)

[2] The Agreement further stated that in the event of termination, Global Force would continue to pay Harley Co. the draw and commissions due for a period of 3 years from the termination. (VAC Exh. A ¶ 8.)

David Shapiro, October 13, 2006 ("D. Shapiro October 13 Decl.") ¶ 4.)  Global Force did business with two of these divisions, VF Imagewear and VF Imagewear (West).  (*Id*. ¶¶ 5-6.)  VF Imagewear operations are located in Tampa, Florida and 95% of Global Force's VF Corp related sales were to VF Imagewear in Tampa.  (*Id*. ¶ 6.)  Global Force did business continuously with VF Imagewear for three years totaling $5-6 million per year.  (*Id*. ¶ 7.)  Further, the goods Global Force manufactured in factories in Jordan and China were shipped to and received in Tampa.  (*Id*. ¶ 6.)

At the time the VAC was filed, Victory City was in the process of acquiring Global Force.  (D. Shapiro August 3 Decl. ¶ 25.)  Plaintiffs allege that it was Victory City's intention to terminate the Agreement and steal certain accounts subject to the Agreement.  (*Id*. ¶ 26.)  As evidence of such intention, Plaintiffs note that the letter terminating the Agreement was transmitted to Plaintiffs by an email originating from Jimmy Yam at Victory City[3] and was copied to various Victory City representatives, including a Victory City director.[4]  *(Id*. ¶ 26, n. 1.) Plaintiffs further allege that there are substantial connections between Victory City and Global Force, including common directors and shareholders.  (*Id*.)   Also, Plaintiffs allege that Victory City contacted Harley Co. clients and provided them with a copy of the termination letter[5] in an attempt to wrongfully deter them from doing business with Harley Co. and solicit

---

[3] Plaintiffs assert that the email was from Victory City because Yam's email address is "jimmy@victorycity.comhk."

[4] The individuals to which the email was copied include Sam Choi, Kelvin Ching, Francis Ho, and Ronnie Dandin.  (D. Shapiro August 3 Decl. ¶ 11.)

[5] An email thread attached to David Shapiro's August 3, 2006 declaration to Jeff Streader of VF Corp provides notification that Jimmy Yam at V-Apparel has terminated the agreement with Harley Co.  (D. Shapiro August 3 Decl. Exh. D.)

their business for V-Apparel International Limited ("V-Apparel"), the newly created division of Victory City that was set up to take the place of Global Force.[6]  (*Id.* ¶ 27.)

Finally, Plaintiffs allege that Global Force and Victory City have a very clear affiliated relationship.[7]  (*Id.*)  Most meetings involving Global Force were held in Victory City offices, Victory City director approval was necessary before transfer of funds could be made from Global Force to Harley Co., representations were made to clients that Victory City and Global Force were part of the same group, and the Victory City directors were also investors in Global Force through a trust with Chan Jiang Pong.[8]  (*Id.* ¶ 13.)

### D.     The January 10, 2005 Meeting in Tampa, Florida

On January 10, 2005 a meeting was held in Tampa, Florida with VF Corporation ("Tampa Meeting"). (*Id.* ¶ 11.)  At the meeting, David Shapiro met with Kelvin Ching and his assistant, Carol Li.[9]  (*Id.*)  Plaintiffs allege there had been a change in management at Global Force, and the purpose of the Tampa Meeting was to introduce the new Global Force merchandising team to VF Corp and to discuss the development of sales for the upcoming year. (*Id.* ¶ 11.)  Defendants assert that the purpose of the meeting was to discuss a new development program that Global Force started which included new designs and new

---

[6] Plaintiffs assert that all Global Force assets and personnel have been transferred to V-Apparel. (D. Shapiro August 3 Decl. ¶ 31.)

[7] Plaintiffs submit various email threads dating back to December 2004 illustrating the business relationship between Global Force and Victory City.  One email from Jeff Wu discusses Victory City's fabric stock in a certain warehouse that it wanted to cut into garments in Jordan. (D. Shapiro August 3 Decl. Exh. B, January 19, 2005 Jeff Wu email.)  The email is in response to an issue that Global Force was having with VF Corp.  There was also an email from Jimmy Yam advising David Shapiro of Victory City's travel policy with regard to a meeting with VF Corp in Tampa. (D. Shapiro August 3 Decl. Exh. B, January 5, 2005 Jimmy Yam email.)

[8] Plaintiffs fail to identify Chan Jiang Pong. (D. Shapiro August 3 Decl. ¶ 13.)

[9] Carol Li was also the assistant to Jeff Wu, head of merchandising for Global Force from November 2002 to May 2005.  (Declaration of Jeff Wu ("Wu Decl.") July 28, 2006, ¶¶ 1, 3, 9.)

quotations for wearing apparel. (Declaration of Carol Li, June 6, 2006 ("Li Decl.") ¶ 10.) Plaintiffs also assert that Kelvin Ching and Jimmy Yam were hired by Victory City under the V-Apparel division to oversee the workings for Global Force and to incorporate all of Global Force's business and accounts into V-Apparel. (Declaration of Jeff Wu, July 28, 2006 ("Wu Decl.") Decl. ¶ 11.) Plaintiffs allege that it was their belief that the new merchandising team was representing Global Force and, therefore, they were willing to set up and participate in the meeting. (D. Shapiro August 3 Decl. ¶ 11.) Plaintiffs further allege that, in actuality, Victory City, acting through V-Apparel, started to do business with VF Corp cutting Global Force out of the picture and circumventing the Agreement obligations to Harley Co. (*Id.*) VF Corp is now a client of Victory City through V-Apparel. (*Id.*)

## II.     Standard of Review

A court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *See Future Tech. Today, Inc., v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir. 2000) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). First, the Court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Id*. Because the extent of the long-arm statute is governed by Florida law, federal courts are required to construe the statute in accordance with rulings of the Florida Supreme Court, or if that Supreme Court has not ruled on the matter, Florida's intermediate courts. *Sculptchair*, 94 F.3d at 627 (citing *Cable/Home Commc'n v. Network Prods.*, 902 F.2d 829, 856 (11th Cir. 1990). Thereafter, if the requirements of the long-arm statute are satisfied, the Court must inquire as to "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial

justice' under the Due Process Clause of the Fourteenth Amendment." *Sculptchair*, 94 F.3d at 626 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

Under Florida law, the ultimate burden of proving personal jurisdiction rests with the plaintiff. *See Sculptchair*, 94 F.3d at 627. The plaintiff bears the initial burden of pleading the basis for service under the long-arm statute. *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989). "When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the plaintiff must then prove jurisdiction by affidavits, testimony or documents."  *See Sculptchair*, 94 F.3d at 627 (citing *Jet Charter Serv., Inc. v Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990), *cert. denied*, 499 U.S. 937 (1991)). To successfully challenge personal jurisdiction, a defendant cannot rely on conclusory statements but rather must provide specific factual declarations relevant to the Court's jurisdictional analysis. *See Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Where the Court's jurisdiction has not been established, dismissal under Fed. R. Civ. P. 12(b)(2) is appropriate.

**III.     Analysis**

Plaintiffs allege that the Court has jurisdiction under three provisions of the Florida Long Arm Statute. (VAC ¶ 7.) Specifically, Plaintiffs assert that the Court has personal jurisdiction over Global Force and Victory City pursuant to Fla. Stats. § 48.193(1)(a) and §

8

48.193(1)(b).[10]  Plaintiffs also contend that the Court has personal jurisdiction over Global Force pursuant to Fla. Stat. § 48.193(2).[11]  Defendants Global Force and Victory City deny that sufficient contacts exist with the forum so as to provide the Court with jurisdiction over them.  Both Plaintiffs and Defendants have supported their position with affidavit testimony.

### A.   Global Force

The first basis for personal jurisdiction over Global Force that Plaintiffs assert is Fla. Stat. § 48.193(1)(a).  To succeed under § 48.193(1)(a), Plaintiffs must demonstrate that the cause of action arises out of activities of the Defendant which, considered collectively, "show a general course of business activity in the State for pecuniary benefit." *Sculptchair*, 94 F.3d at 628 (finding that there was jurisdiction over an individual that had made minimal marketing efforts and attended business meetings in Florida that resulted in a financial benefit of an estimated $3000).

Here, when Global Force executed the Agreement with Harley Co., a Florida corporation, it contemplated that it would be doing business with VF Corp and all of its divisions.  The Agreement provides that it will be governed by Florida law.  VF Corp and all of its divisions were specifically listed as clients that Harley Co. was registering with Global

---

[10]  Fla. Stat. § 48.193(1) states in relevant part:
Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
   (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
   (b) Committing a tortious act within this state.

[11]  Fla. Stat. § 48.193(2) states,
   A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

9

Force. While VF Corp is a North Carolina company, its subsidiary, VF Imagewear, is located in Tampa, Florida. In fact, 95% of Global Force's VF Corp related sales were to VF Imagewear in Tampa. Such sales resulted in an estimated $5-6 million dollars worth of business per year for Global Force for over three years. Also, the Global Force manufactured goods sold to Imagewear in Tampa were shipped from the Global Force factories in Jordan and China directly to VF Corp's Tampa location. Finally, Global Force also attended at least one meeting in Tampa for the purpose of furthering their business relationship with VF Corp. Clearly, such conduct lasting over a period of more than three years and resulting in millions of dollars in business constitutes, "general course of business activity" for "pecuniary benefit." *See Sculptchair*, 94 F.3d at 628. Having found that there is personal jurisdiction over Global Force pursuant to § 48.193(1)(a), it is not necessary to determine if Global Force committed a tort within the State of Florida for purposes of § 48.193(1)(b).

Because there is personal jurisdiction pursuant to the Florida Long Arm Statute, the Court must next determine "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Sculptchair*, 94 F.3d at 626 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts involve three criteria. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994); *see also McHugh v. Kenyon,* 547 So. 2d 318, 319 (Fla. 4th DCA 1989). First, the contacts must be related to the plaintiff's cause of action or have given rise to it. *Id.* Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its

laws. *Id.* Finally, the defendant's contacts within the forum state must be such that it should reasonably anticipate being haled into court there. *Id.*

Here, the first criteria is met because the current dispute arises out of Global Force's contract with Harley Co., a Florida corporation. As to the second and third criteria, Global Force contemplated that its products would be sold to VF Corp and its Florida subsidiary at the time of the execution of the Agreement as well as during their lengthy business relationship involving direct shipments to Tampa, Florida. Further, the Agreement specifically states that it shall be governed by Florida law. Thus, Global Force has purposefully availed itself of Florida law and should reasonably anticipate being sued in Florida for a dispute arising from the contract with Harley Co. *See McHugh,* 547 So. 2d at 319 (finding that a manufacturer that produces hundreds of thousands of product units that are distributed over a five-year period in the United States, of which at least 6,000 were marketed in Florida, should reasonably anticipate being sued in this state in connection with product defects causing injury).

Having found that the Court possesses of personal jurisdiction over Global Force pursuant to Fla. Stat. § 48.193(1), it is not necessary to determine if there is personal jurisdiction over Global Force pursuant to Florida's general jurisdiction statute, Fla. Stat. § 48.193(2).

**B.     Victory City**

The analysis regarding Victory City is more complex. Plaintiffs claim that there is personal jurisdiction over Victory City under a co-conspirator theory with Global Force.[12]

---

[12] Plaintiffs allege that Victory City also has non-related contacts with the United States including through its subsidiary Winning Zone and Ford Glory. Plaintiffs further allege that Victory City and Global Force did business with Martin Steward Ltd. in Florida, a company that was specifically exempted from the Agreement with Harley Co. These contacts are unrelated to the current dispute and more appropriately support a finding of general jurisdiction pursuant to the general jurisdiction statute, § 48.193(1)(b). Plaintiffs, however, do not argue that this

Plaintiffs also claim that Victory City used its subsidiary, V-Apparel, as its agent, such that the actions of V-Apparel may be attributed to Victory City. The "co-conspirator theory" permits a state to assert jurisdiction over a non-resident defendant who has no direct contacts with that state. *Hasenfus v. Secord*, 797 F. Supp. 958, 961 (S.D. Fla. 1989.) Although the precise contours of this theory have never been defined, the theory basically permits a state to assert jurisdiction over a non-resident defendant if: (1) jurisdiction can, under the traditional tests, be asserted over a "resident" defendant (i.e. one with sufficient ties to the state);[13] (2) the plaintiff can demonstrate the existence of a conspiracy in which the non-resident defendant and the resident defendant participated; and (3) an overt act in furtherance of the conspiracy took place within the state. *Id.; see also Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236-37 (6th Cir. 1981) (describing, without applying, parameters of the co-conspirator test). To establish the conspiracy, a plaintiff cannot, for the purposes of a motion to dismiss, simply repeat the allegations contained in the complaint. *Hasenfus*, 797 F. Supp. at 961. Rather, to carry his burden, a plaintiff must at least make out a colorable, factually supported claim of the conspiracy's existence. *Id.*

   Here, Plaintiffs' specific conspiracy allegations, which are necessary to fulfill the second and third criteria of the "co-conspirator" theory, relate to the termination of the Agreement which damaged Harley Co. in Florida. However, V-Apparel carried out such alleged actions because Jimmy Yam, V-Apparel's general manager, was the individual who

---

Court has general jurisdiction over Victory City. (*See* VAC ¶ 7.)

   [13] Because this Court has found that there is personal jurisdiction over Global Force, Plaintiffs have met the requirements of the first criteria.

sent the termination email and letter to David Shapiro and VF Corp.[14]  Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there.  *Meier*, 288 F.3d at 1271.  Where the subsidiary's presence in the state is primarily for the purpose of carrying out its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary.  *Id.*  On the other hand, if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction, or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction.  *Id.*  Thus, to sufficiently allege that the Court has jurisdiction over Victory, City, Plaintiffs must show that Victory City acted through V-Apparel.

### 1.     Is V-Apparel the Agent of Victory City?

Here, Plaintiffs allege that Victory City was acting through V-Apparel employees, Kelvin Ching and Jimmy Yam.[15]  Plaintiffs must show that V-Apparel, the entity with the alleged contacts to Florida, conducts business solely for the benefit of the foreign corporation, Victory City.  *See Meier*, 288 F.3d at 1272-73.  Plaintiffs can show this by offering evidence

---

[14] To further confuse matters, the letter attached to the termination email is on the letterhead of an entity called "World Seasons Limited," which neither party has identified, although the Agreement names "World Season" as a party to the Agreement.  (VAC Exh. A.)

[15] Plaintiffs' own witnesses' declarations support the proposition that both Ching and Yam worked for V-Apparel.  Jeff Wu, former head of merchandising for Global Force, testified that "Kelvin Ching was employed by Victory City under the V-Apparel division."  (Wu Decl. ¶ 10.)   In his own declaration, David Shapiro stated that Yam headed a new management team to take over the running of Global Force and he later stated that the new management team was a part of V-Apparel.  (Shapiro August 3 Decl. ¶ 11.)

that Victory City and V-Apparel have financial and accounting ties, coordinate marketing efforts, maintain direct communication links, or otherwise coordinate their business efforts. *See id.*

The only evidence that Plaintiffs offer in support V-Apparel's agency relationship with Victory City, is that the termination email sent to David Shapiro and later sent to VF Corp was sent from Jimmy Yam's Victory City email address, "jimmy@victorycity.com.hk.[16]  Such evidence does not by itself, however, prove that Yam was acting on behalf of Victory City when he sent the email.  In fact, there is evidence that Yam was in fact working for V-Apparel.  In an email to "Jeff_Streader" at VF Corp. labeled as "Exhibit D" to David Shapiro's August 3, 2006 declaration, the author[17] states that

> "[a]ttached is for your reference of the letter that we received from V-Apparel (Global Force / World Season) which is the notice of termination of their relationship with David Shapiro c/o Robert D Harley Co. Ltd.  Jimmy Yam, the General Manager advised that communication between V-Apparel (Global Force / World Season) and VF Imagewear will be made through V-Apparel HK Office and VF Asia."

(D. Shapiro August 3 Decl. Exh. B, February 18, 2005 email to Jeff Streader.)  The email clearly indicates that Yam was representing V-Apparel when he terminated the Agreement with Harley Co. Thus, Plaintiffs have not sufficiently supported their position that V-Apparel was acting as the agent for Victory City[18] and as a result, Plaintiffs have not provided colorable

---

[16] In his declaration, David Shapiro also states that V-Apparel is controlled by Victory City, but offers no factual support for that assertion.  (D. Shapiro August 3 Decl. ¶ 31.)

[17] The author of the email is not identified.

[18] Victory City, on the other hand, maintains that V-Apparel is a separate entity from Victory City.  In support of this contention, Victory City states that V-Apparel maintains its own management officers, submits periodic financial and operational reports to Victory City, and that Victory City does not control the day to day operations of V-Apparel.  (Lee Decl. ¶¶ 11-14.)

factual support establishing that Victory City, through V-Apparel, engaged in a conspiracy with Global Force subjecting it to the Court's jurisdiction.

Because the actions of V-Apparel cannot be imputed to Victory City through an agency theory, it is necessary to determine if the actions of Victory City itself, apart from those of V-Apparel, are sufficient to show the existence of a conspiracy with Global Force to terminate the Agreement.

### 2. Did Victory City, Apart From V-Apparel, Engage In A Conspiracy With Global Force?

Personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates. *Meier,* 288 F.3d 1273; *see also Pappalardo v. Richfield Hospitality Servs., Inc.*, 790 So. 2d 1226, 1228 (Fla. 4th DCA) (finding jurisdiction based on evidence that the various parent and subsidiary defendants were "a confusing conglomerate, and were essentially one and the same company both financially and structurally.")  Plaintiffs allege that Global Force was acting for Victory City because Victory City was in the process of purchasing Global Force and Global Force terminated the Agreement at the insistence of Victory City so that it could steal business from Harley Co.

In support of this contention, Plaintiffs assert that email threads dating back to December 2004 attached to David Shapiro's August 3, 2006 declaration, show that Victory City and Global Force were closely affiliated entities.  The email threads are difficult to interpret, but it is evident that there exists an on-going business relationship involving Kelvin Ching and Jimmy Yam of V-Apparel, Jeff Wu of Global Force, and David Shapiro of Harley Co.  Further, the emails also seem to indicate that Global Force's business was interwoven with

that of Victory City.  For example, Jeff Wu was the head of merchandising for Global Force, but one email thread indicates that he was aware of the stock fabric in a Victory City warehouse that Victory City wanted to "cut[] into garment in Jordan," presumably at Global Force's Jordan factory.  (D. Shapiro August 3 Decl. Exh. B, Jan. 19, 2005 email from Jeff Wu to David Shapiro.)  The email is in response to an issue that Global Force was having with VF Corp.  (*Id.* at Jan. 18, 2005 email from Jeff Wu to David Shapiro.)  Thus, Jeff Wu seems to be acting for Victory City in furtherance of Global Force's business with VF Corp via the contract with Harley Co.

Further, another email describes how Jimmy Yam, ostensibly acting on behalf of Victory City, advises David Shapiro of Victory City's travel policy for purposes of a meeting with VF Corp relating to the Agreement between Global Force and Harley Co.  (*Id.* at Jan. 5, 2005 email from Jimmy Yam to David Shapiro.)  Clearly, such email indicates that Victory City policies were governing Global Force's relationship with both Harley Co. and VF Corp.  Further, Plaintiffs have also asserted, and Victory City has not refuted, that Global Force and Victory City share common directors and shareholders; that most meetings involving Global Force were held in Victory City offices; that director approval at Victory City was necessary before transfer of funds could be made from Global Force to Harley Co.; that representations were made to clients that Victory City and Global Force were part of the same group; and that Victory City directors were also investors in Global Force through a trust with Chan Jiang Pong.  (D. Shapiro August 3 Decl. ¶ 13.)

Finally, while Jimmy Yam may have been acting on behalf of V-Apparel when he sent the email terminating the Agreement between Global Force and Harley Co., it must be noted

16

that the email was copied to Sam Choi, Kelvin Ching, Francis Ho, and Ronnie Dandin, all individuals affiliated with or employed by Victory City.[19]  Thus, this seems to infer that Victory City had some interest in knowing that the Agreement was terminated.  This position is bolstered by the fact that, after the contract was terminated, Victory City's subsidiary V-Apparel took over the business with VF Corp.

The facts alleged by Plaintiffs are not comprehensive and leave several areas of uncertainty.  However, while no one of these single facts alone are sufficient to show that Global Force was acting on behalf of and engaged in a conspiracy with Victory City, the facts taken together paint a picture of a company that acted in coordination with Global Force in its relationship with VF Corp., even dictating the policies that those who worked with Global Force must abide by, and then financially benefitting from the termination of an agreement that it was specifically informed about.  Drawing all inferences in favor of the Plaintiffs from the present record, the Court finds that Plaintiffs have plead the bare minimal colorable facts necessary to support their assertions that Victory City is affiliated with Global Force and that both entities conspired to terminate Harley Co.'s Agreement with Global Force.  Accordingly, this Court may assert personal jurisdiction over Victory City.

## IV.    Conclusion

For the reasons set forth above, it is hereby

ORDERED that

(1)    Victory City's Motion to Dismiss [DE 50] is DENIED.

(2)    Global Force's Motion to Dismiss [DE 56] is DENIED.

---

[19] Plaintiffs allege that one of these individuals is a Victory City director, but have not stated which one. (VAC ¶ 21, n. 1.)

  (3) Plaintiffs' Motion Requesting Permission to Take Jurisdictional Discovery and the Scheduling of an Evidentiary Hearing on the Issues [DE 90] is DENIED AS MOOT.

  DONE AND ORDERED at Miami, Florida, this <u>23rd</u> day of January, 2007.

            */s/ Patricia A. Seitz*
            PATRICIA A. SEITZ
            UNITED STATES DISTRICT JUDGE

cc:
Counsel of Record